IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02750-MSK-KMT

XTREME COIL DRILLING CORPORATION,

       Plaintiff,

v.

ENCANA OIL & GAS (USA), INC.,
PACIFIC RIM ENGINEERED PRODUCTS, LTD., and
1297835 ALBERTA LTD., d/b/a Mayco Industries Group,

       Defendants,

and

PACIFIC RIM ENGINEERED PRODUCTS, LTD., and
1297835 ALBERTA LTD., d/b/a Mayco Industries Group,

       Counterclaim Plaintiffs,

v.

XTREME COIL DRILLING CORPORATION,

       Counterclaim Defendant.
_____

**OPINION AND ORDER GRANTING AND DENYING MOTIONS FOR
SUMMARY JUDGMENT**
_____

       **THIS MATTER** comes before the Court pursuant to Defendant 1297835 Alberta Ltd.'s

("Alberta") Motion for Summary Judgment **(# 101)**, Plaintiff Xtreme Coil Drilling Corporation's

("Xtreme") response **(# 102)**, and Alberta's reply **(# 106)**; Defendant Pacific Rim Engineered

Products, Ltd.'s ("Pacific") Motion for Summary Judgment **(# 104)**, Xtreme's response **(# 118)**,

1

and Pacific's reply **(# 122)**; Pacific's Motion for Attorney's Fees **(# 117)**, Xtreme's response **(#125)**, and Pacific's reply **(# 128)**; Encana Oil & Gas (USA), Inc.'s ("Encana") Motion for Summary Judgment **(# 120)**, Xtreme's response **(# 130)**, and Encana's reply **(# 139)**; and Xtreme's Motion for Summary Judgment against Encana **(# 121)**, Encana's response **(# 135)**, and Xtreme's reply **(# 140)**.

## **FACTS**

In consideration of a motion for summary judgment, the Court considers only the undisputed facts and construes those that are disputed most favorably to the non-movant. Because several motions are at issue, here, the Court will summarize the facts as set forth in the pleadings herein, and elaborate as necessary as part of its analysis. According to Xtreme's Amended Complaint **(# 66)**, Xtreme is in the business of drilling oil and gas wells. Each drilling rig it uses contains a "motorized drawworks" – a hoist device for raising and lowering equipment into and out of the well bore.

In May 2008, Xtreme was drilling wells pursuant to a contract with Encana, using drawworks designed and manufactured by Pacific, and a device designed and manufactured by Alberta to control the drawworks. On May 4, 2008, the control system on a rig malfunctioned, causing the drawworks to fall to the bottom of the rig and causing damage. As a result of this incident, Encana directed Xtreme to cease all drilling on the affected rig, as well as several other rigs using the same technology. A few months later, Encana terminated its drilling contract with Xtreme, and refused to pay certain sums that Xtreme contends were due under the contract.

Xtreme asserts three claims for relief in this action: (i) breach of contract against Encana, resulting from the failure of Encana to pay the amounts owed under the terminated drilling

contract; (ii) strict products liability, apparently under Colorado common law, against Pacific and Alberta; and (iii) common law negligence, apparently asserted under Colorado law, against Pacific and Alberta.

Both Pacific and Alberta **(# 114)** assert counterclaims against Xtreme. Pacific's counterclaim **(# 31)** sounds in breach of contract, alleging that Xtreme has failed to pay for certain drawworks that it ordered from Pacific and Pacific delivered, as well as failed to pay for certain services rendered by Pacific. Alberta's counterclaim **(# 114)** contends that Xtreme's claims against it lack any substantial justification, thus warranting an award of attorney's fees pursuant to C.R.S. § 13-17-102.

All parties have now moved for entry of summary judgment against each other. The Court will address the specific arguments contained in those motions as part of its analysis.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

3

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a

4

*prima facie* case or to establish a genuine dispute as to material fact, cross-motions must be evaluated independently." *see Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another").

### B. Alberta's motion

Alberta seeks summary judgment on Xtreme's claims for products liability and negligence, contending: (i) although Alberta "does not take a position" on the issue, it is possible that Xtreme's claims should be governed by Canadian law,[1] as the control system was designed, manufactured, and sold to Xtreme in Canada; (ii) as to the negligence claim, Xtreme cannot show that Alberta owed any duty to Xtreme, breached such a duty, or that such a breach caused Xtreme's damages; and (iii) as to the products liability claim, Xtreme cannot show that the control system was defective, that it reached Xtreme in substantially the same condition as it was sold, or that it caused Xtreme's damages.

Xtreme's response to this motion does not attach supporting evidence nor, with one exception, cite to the evidence submitted by Alberta. Xtreme's response primarily consists of argument that Alberta's motion fails to address certain facts – *e.g.* "nowhere in the Motion or

---

[1]Alberta flags the choice of law issue as existing, but declines to take a position as to which jurisdiction's law applies. Xtreme does not respond to the choice of law issue at all. In the absence of either party (much less both) taking the position that a specific jurisdiction's law applies (and, conversely, that a certain jurisdiction's law should <u>not</u> apply), the Court declines to render what would essentially be an advisory opinion as to the choice of laws question. Because neither party actively contends that it would be error for this Court to apply Colorado law to the claims herein, the Court will do so, deeming the parties to have waived the right to assert otherwise.

5

cited materials is there even an indication that the control system provided by [Alberta] included kinetic energy management"; "the motion . . . fails to indicate in anyway the impact of [modifications made to the control system by Xtreme] on the allegations of Xtreme." Because Xtreme is the party with the burden of proof on the claims of negligence and products liability, it must respond to a summary judgment motion by coming forward with "sufficient competent evidence to establish" the challenged element(s). *Celotex*, 477 U.S. at 322-23. Because it has not tendered any evidentiary material controverting or supplying additional context to that which Alberta has supplied with its motion, the Court treats the facts alleged by Alberta and embodied in its supporting evidence as true, and proceeds to ascertain whether such evidence permits Xtreme to carry its burden of proving the elements challenged by Alberta.

Turning first to the negligence claim, Xtreme must show: (i) that Alberta owed it a legal duty to conform to a certain standard of care; (ii) that Alberta breached that duty; (iii) that Xtreme suffered injuries; and (iv) that there is a causal relationship between the breach and the injury. *Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009). Causation, for purposes of a negligence claim, requires a showing that the breach of the duty was both the legal cause of the plaintiff's injuries – *i.e.* that "but for" the defendant's breach, the injury would not have occurred – and that the breach was a proximate cause of the injury – *i.e.* that the injuries flowed from the breach in a natural and continued sequence. *See Smith v. State Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987).

Alberta argues that Xtreme cannot establish that any breach of duty Alberta might have committed was the legal and proximate cause of the accident involving the drawworks. Alberta contends (and, as noted, Xtreme has not disputed) that Xtreme has only identified one witness,

6

Gary Werner, to opine as to the cause of the accident. Alberta has tendered a transcript of Mr. Werner's deposition in which he testifies regarding his understanding of the cause of the accident: "I have a conclusion of the events that took place. As far as the exact cause, I'm not sure about it . . . The thing that triggered it, I can't say that I know that." Mr. Werner was then asked "Is it true, sir, that you personally have not formed an opinion as an expert with regard to the cause of this accident," and Mr. Werner responded "I'd agree." Mr. Werner also agreed with statements that, at the time of the accident, "the PLC [that is, the control system] was operating as it should," and that nothing indicates that the control system "didn't function as you wanted it to." Mr. Werner was then asked "is it also fair to say, sir, that you don't have any information that the functioning of the PLC itself caused this accident?" and Mr. Werner responded "I would agree." The only evidence before the Court does not show Alberta caused of Xtreme's injury.

Xtreme appears to argue that Alberta's showing is insufficient because it does not respond to Xtreme's theory of the case – that the control system was defective because it did not contain a system for "kinetic energy management." It observes that Mr. Werner was not questioned about the lack of a kinetic energy management system, and thus, his testimony "relates to the control system as it existed, but without regard to whether the lack of a [kinetic energy management system] was a defect that rendered the control system unreasonably dangerous."[2] This argument is frivolous. The burden is on Xtreme to come forward with

---

[2]Without any evidentiary submission by Xtreme to establish the absence of a kinetic energy management system in Alberta's product, the Court cannot even assume that such a system did not exist. Mr. Werner was asked whether certain conditions would cause "any kinetic energy management system [to] not provide its intended function." Mr. Werner's response to this question did not point out that no kinetic energy management system existed on this device, or otherwise give any indication that such a question had no significance to the control system at issue here.

evidence that Alberta's actions were the cause of the accident. If Mr. Werner believed that Alberta's failure to include a kinetic energy management system in the drawworks controller was the cause of the accident, he could have testified as such. Xtreme's suggestion that it is Alberta's obligation to <u>disprove</u> Xtreme's theory of the case reflects a fundamental misunderstanding of the burden of proof that Xtreme bears on its own claims.

The Court finds that the uncontroverted evidence fails to establish that any breach of duty by Alberta was the cause of the accident. Accordingly, Alberta is entitled to summary judgment on Xtreme's negligence claim.

Turning to the products liability claim, Colorado follows common-law rules.[3] *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1173 (Colo. 1993), *citing* Restatement (Second), <u>Torts</u> § 402A. The Restatement explains that "one who sells any product in a defective condition unreasonably dangerous to the user" is subject to liability. A "defective condition" is one that is "not contemplated by the ultimate consumer" and which "will be unreasonably dangerous to him." Restatement, § 402A, comment g. A product is not "defective" if it is delivered in a condition that would prove safe when "handled in a normal manner," but "subsequent mishandling" is the cause of the user's injury. *Id.* Thus, a plaintiff asserting a claim for products liability under Colorado law must prove: (i) the product has a defective condition rendering it unreasonably dangerous to the consumer; (ii) the product was expected to and did reach the consumer without substantial change in that condition; (iii) the defect caused the

---

[3]Colorado maintains a Products Liability Act, C.R.S. § 13-21-401 *et seq.*, but that act merely provides for various defenses and presumptions that are applicable in "any action brought against a manufacturer or seller of a product." C.R.S. § 13-21-401(2). It does not purport to create any substantive right of action.

plaintiff's injury; (iv) the defendant sold the product and is in the business of doing so; and (v) the plaintiff sustained damages. *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536-37 (Colo. 1997).

The foregoing discussion – *i.e.* that Xtreme has no evidence to demonstrate - that Alberta's design or manufacture of the control system was the cause of the accident – is applicable to the products liability claim as well. Causation is an element of both claims, and the type of causation required for both types of claims is identical. *See e.g. Kinard v. Coats Co.*, 553 P.2d 835, 837 (Colo. App. 1976) (defect in design or manufacture of product must be the proximate cause of the plaintiff's injury). Moreover, there is also undisputed evidence in the record that Mr. Werner made a number of changes to the control system after receiving it from Alberta and prior to the accident. Among other things, Mr. Werner disabled an instantaneous braking system created by Alberta, replacing it with a braking system that would not activate until 10 seconds after the operator had released control of the drawworks, and also modified the control system so that the drawworks engine to continue to run for two seconds after it had been switched off, rather than it shutting off immediately.[4] It is thus undisputed that, at the time of the accident, the control system had experienced substantial changes in its condition from when it was delivered by Alberta, further dooming any products liability claim by Xtreme.

Accordingly, the Court finds that Alberta is entitled to summary judgment on both of Xtreme's claims against it.

**C. Pacific's motions**

---

[4]Ostensibly, Mr. Werner made this change because shutting off the power to the drawworks engine immediately might allow the load being hoisted to shift slightly before the brakes fully applied.

Pacific's summary judgment motion argues: (i) the claims may be goverened by Canadian law, although Pacific declines to take a position on the question; and (ii) that expert testimony is necessary to establish several of the elements of both the negligence and products liability claims against Pacific, and Xtreme has not endorsed any expert to opine as to such matters. For the same reasons discussed above, because neither party affirmatively asserts that the claims are controlled by a particular jurisdiction's laws, the Court declines to address the choice of laws issue and simply assumes that the parties agree that Colorado law controls.

Thus, the Court need only address two questions with regard to Pacific's motions: (i) is expert testimony by Xtreme required to establish one or more elements of the negligence or products liability claims against Pacific; and (ii) if so, has Xtreme come forward with such expert testimony. The first question is one of law. Colorado provides that "expert testimony is required in negligence cases to establish the standard of care when the standard if outside the common knowledge and experience of ordinary persons." *Oliver v. Amity Mut. Irrigation Co.*, 994 P.2d 495, 497 (Colo. App. 1999), *citing Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 929-30 (Colo. 1997). The question of whether the standard of care is one within common knowledge or not is a determination that is committed to the sound discretion of the trial court. *Id.* Such questions are highly fact-dependent, examining the nature of the dispute, the extent to which persons of ordinary intelligence can assess whether the defendant breached the standard of care applicable to a reasonable person in the defendant's shoes, and the extent to which lay testimony by persons employed in the field can explain the type of behavior commonly observed in that field, among other factors. *Id.* at 497-98.

Here, Pacific has offered an extended argument that expert testimony is necessary for the

factfinder to understand the operation of oil drilling rigs, the purpose; design, and operation of motorized drawworks; and other matters essential to a full appreciation of the existence of any duty owed by Pacific to Xtreme and to the existence of any breach of that duty.

Xtreme has not argued to the contrary. Xtreme does not contend, for example, that expert testimony is <u>not</u> required in these circumstances; rather, it argues only that it is not required to produce its own experts because it intends to rely on conclusions reached by Pacific's experts. Because the Court does not understand Xtreme to dispute Pacific's contention that the particular factual circumstances of this case would require expert testimony as to questions of the existence and breach of a duty, the Court simply accepts the parties' apparent agreement on this question.

Thus, the only remaining issue is whether, in relying on Pacific's investigation of the incident and the conclusions reached therein, Xtreme has come forward with sufficient expert testimony to carry its burden of proving the existence and breach by Pacific of a duty owing to Xtreme. Xtreme contends that it can establish Pacific's duty and breach thereof by pointing solely to a report of the accident prepared by Brad Williams. That report reads, in pertinent part, "The investigation of the incident revealed two main contributing factors: 1) the control system allowed the drawworks to achieve working speeds above safe operating limits . . . [and] 2) . . . it appears that the brake calipers may not achieve the brake clamping force or stopping torques published by the brake manufacturer." Elaborating on the second point, Mr. Williams' report states that, after some physical testing, "the brake torque values achieved did not meet expected values. . . Further caliper testing in a test facility indicates that the calipers are not meeting the expected capacity. This would contribute to an increased stopping distance, and explain the

initial deviations from expected braking performance."

Xtreme's reliance on Mr. Williams' report for purposes of proving the existence of a duty owed by Pacific to Xtreme and the breach of that duty is problematic for several reasons. From a procedural perspective, there is no indication that Xtreme (or even Pacific) has identified Mr. Williams as an expert under Fed. R. Civ. P. 26(a)(2). Xtreme's response to the motion attaches Pacific's Rule 26 disclosures, but those disclosures only mention Mr. Williams as a lay witness pursuant to Rule 26(a)(1). (There is no indication that Xtreme itself identified Mr. Williams as an expert it intended to rely upon under Rule 26(a)(2)(A).) Generally, a witness who has not been properly identified pursuant to Rule 26(a)(2) cannot thereafter offer expert testimony. *See Parker v. Central Kansas Medical Ctr.*, 57 Fed.Appx. 401, 404 (10th Cir. 2003).

Secondly, because Mr. Williams' report is the only evidence submitted by Xtreme in response to Pacific's motion, the report itself must be sufficient to carry Xtreme's burden of attesting to the existence of a duty and its breach. Unfortunately, it does not purport to set forth the contours of any duty owed by Pacific to Xtreme, much less opine as to Pacific's breach of such a duty. Taken in the light most favorable to Xtreme, Mr. Williams' report states only that the "brake calipers may not achieve the brake clamping force . . . published by the brake manufacturer" and that "the calipers are not meeting the expected capacity." However, Mr. Williams' report does not include facts that would show that Pacific is responsible for such failures. Utterly absent from Mr. Williams' report is an explanation as to how "brake calipers" relate to the portion of the drawworks designed and manufactured by Pacific, the extent to which Pacific's duties to Xtreme extend to and embrace the performance of the calipers, or the extent to which the failure of the calipers reflects Pacific's breach of that duty.

This omission is significant, as Pacific has come forward with evidence, in the form of an opinion by its own disclosed expert Norm Johnson, that "the Kobelt brakes did not actually perform up to published catalog clamping force values . . . [Pacific] would have no way to know [that] and no reason to test the accuracy of the statements made in the Kobelt catalog." In other words, Mr. Johnson apparently opines that the calipers in question were manufactured by Kobelt, not Pacific, and that to the extent Pacific had a duty to exercise reasonable care in incorporating Kobelt's brake products into the drawworks it sold to Xtreme, Pacific did not breach that duty because it had no way to know that Kobelt's products would not function as they had been represented by Kobelt to do.

Without an express opinion by Mr. Williams that a reasonable manufacturer in Pacific's shoes would not have relied upon Kobelt's representations as to its products' capabilities, Mr. Williams' report is not sufficient to satisfy Xtreme's burden of proof or to even create a genuine dispute of material fact when compared to Mr. Johnson's opinion that Pacific did not breach any duty it owed to Xtreme. Thus, the Court finds that Pacific is entitled to summary judgment on Xtreme's negligence claim.

A similar analysis results in summary judgment to Pacific on Xtreme's products liability claim. Under Colorado law, products liability claims involving matters outside the experience of the average layperson, like negligence claims involving such complex or technical issues, require expert testimony to prove issues such as causation. *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004). Once again, the Court notes that Xtreme has not disputed this proposition nor come forward with facts or argument that expert testimony should <u>not</u> be required in this case. Thus, the question is whether Xtreme's proffered "expert" testimony – Mr.

Williams' report – can satisfy Xtreme's burden to prove the elements of its products liability claim. As the Court has previously found, Mr. Williams has not properly been designated as an expert to opine on matters such as these, preventing Xtreme from relying on his report to satisfy its obligation to produce expert testimony.

Moreover, the Court finds that the report does not specifically opine as to the essential elements of a products liability claim. As noted above, a product is not "defective" for products liability purposes when it is delivered in a condition that would prove safe when "handled in a normal manner"; in other words, an otherwise safe product which becomes dangerous as a result of "subsequent mishandling" does not give rise to liability. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 517 P.2d 406, 413 (Colo. App. 1973), *citing* Restatement, § 402A. Here, Mr. Williams' report notes that the drawworks failed when "the control system allowed the drawworks to achieve working speeds above safe operating limits," which in turn precipitated the need for emergency braking. Mr. Williams' report does not suggest that, in ordinary operation, the brakes included with the drawworks would be defective. Thus, because Mr. Williams concluded that the accident occurred as a result of mishandling of the drawworks – by the control system driving it "above safe operating limits" – and not as a result of a defective condition manifesting itself through ordinary and normal operations, Mr. Williams' report does not suffice to carry Xtreme's burden of demonstrating, through expert testimony, the elements of a products liability claim. Thus, Pacific is entitled to summary judgment on both of Xtreme's claims against it.

Pacific has filed a second motion, seeking an award of attorney's fees against Xtreme on the grounds that the claims against Pacific were "substantially groundless" under C.R.S. § § 13-

17-102. Pacific's motion appears to contend that Xtreme's claims against it were groundless from the inception of this case for a single reason: that Xtreme's representatives testified in depositions that they did not disagree with the results of an investigation that found that Pacific's conduct did not contribute to the accident.

Regardless of the procedural vehicle by which the Court analyzes Pacific's request,[5] the Court finds that an award of attorney's fees is inappropriate on the grounds asserted by Pacific. The investigation report that Pacific relies heavily upon, and which Xtreme's representatives did not disagree with, purports to identify "the following root cause for the drawworks incident." Two bullet points follow in the report:

> • "The drilling control [ ] software did not limit the drawworks operation to a safe range, which directly led to the top drive runaway."
>
> • "Additionally, the drawworks had insufficient braking capacity to permit safe operation; however, this braking deficiency did not directly lead to the drawworks incident."

Pacific reads this text to absolve it of responsibility for the incident, even though the drawworks it designed "had insufficient braking capacity to permit safe operation." Pacific relies on the conclusion that "this braking deficiency did not directly lead to the drawworks incident." In the abstract,[6] it is entirely possible for the statement in the report to be true (as Xtreme's

---

[5] Whether the Court applies Colorado law, in the form of C.R.S. § 13-17-102, or federal law, in the form of 28 U.S.C. § 1927, the result is the same: a party may be liable for attorneys fees and costs of its adversary if the party's claims are patently without merit.

[6] The Court emphasizes that the discussion of Xtreme's claims in the context of Pacific's attorney fee motion is entirely independent of its analysis of Pacific's summary judgment motion. The parties have submitted different evidence and different briefs with regard to each of the motions, and the Court has scrupulously limited the consideration of each motion to only the arguments and evidence submitted by the parties with regard to that particular motion. Findings

15

representatives accept) and yet Pacific can still arguably be liable to Xtreme in tort.

A plausible reading of the report is that the "drawworks incident" the report refers to was the "top drive runaway" that caused the drawworks to exceed its safe capacity, seize up, and begin to fall. Indisputably, braking deficiencies did not cause this portion of the incident. However, once the drawworks began to fall, the braking deficiency then manifested itself, and that defect contributed to damages sustained by Xtreme when the drawworks struck the bottom of the well and suffered damage. In other words, had the drawworks' braking system been properly designed or manufactured, perhaps it would have arrested the fall of the drawworks short of impact. In this sense, it is possible for Xtreme to agree completely with the report – the braking deficiency did not directly lead to the incident in which the drawworks began to fall, but it did contribute to Xtreme's injuries by not stopping that fall short of impact. Arguably, Pacific could be liable to Xtreme in these circumstances for Pacific's own negligence in failing to design and implement a braking system that could protect a falling drawworks from impact damage, regardless of the reasons why the drawworks began to fall. *See e.g. Oliver*, 994 P.2d at 498 (party may be liable where its negligence "contributed to or cooperated with" an act of another so as to cause damage); *Silfer v. Wheeler and Lewis*, 567 P.2d 388, 393 (Colo. App. 1977) ("It is a well established principle of law that more than one person may be responsible for causing injury. If one party is negligent, and such negligence is a proximate cause of injury to plaintiff, it

---

made by the Court with regard to one motion cannot be considered to affect the analysis of the other motion.
    Moreover, the Court observes that, in assessing whether Pacific is entitled to an award of fees because Xtreme's claims were groundless, the Court examines the tenability of those claims in the light that they arguably appeared to Xtreme at the time this action was commenced, not in light of those claims as Xtreme later presented them on summary judgment.

is no defense that some third party's negligence may have also contributed to injury"), *rev'd on other grounds*, 577 P.2d 1092 (Colo. 1978).

Thus, the Court finds that, notwithstanding Xtreme's representatives' agreement with the conclusions in the investigation report, Xtreme could have had a colorable basis to bring the claims it asserted against Pacific. Whether those claims were sufficiently pled and prosecuted is a different question that does not directly bear on the analysis. The Court cannot say that the claims against Pacific were "substantially groundless" or otherwise warranting sanctions, and thus, Pacific's motion for attorney's fees is denied.

**D. Xtreme and Encana's cross-motions**

Xtreme and Encana each seek summary judgment on Xtreme's claim against Encana for breach of contract.

Under Colorado law, a party asserting breach of contract must show: (i) the existence of a contract; (ii) substantial performance by the plaintiff of its duties or a justification for nonperformance; (iii) the defendant's failure to substantially perform its duties; and (iv) resulting damages. *Western Distributing Co. v. Diodoso*, 841 P.2d 1053, 1058 (Colo. 1992). "Substantial performance" occurs when "the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance." *Id.*

It is undisputed that Xtreme and Encana entered into an agreement by which Xtreme would operate the drilling rigs for Encana and it is undisputed that, for purposes of this claim, Encana has not substantially performed its duties by paying Xtreme the full amounts claimed by Xtreme under the contract. The sole question central to both parties' motions is whether Xtreme

17

substantially performed its obligations under the parties' agreement.

The parties' agreement primarily calls upon Xtreme to drill wells to a specified depth, in exchange for "daywork" payments from Encana at a specified daily rate. These general obligations are supplemented by an array of additional contractual promises exchanged between the parties. Encana's motion identifies three provisions in the parties' agreement that it contends Xtreme has breached:

> • Xtreme "represents that the equipment to be used to accomplish the work under this Contract shall be of adequate size and capacity to perform said work efficiently and safely."
>
> • Xtreme "shall use its best efforts to maintain a drug-free environment . . . Upon presentation of substantial evidence of drug or alcohol use on [Encana's] property, or while performing services for [Encana], by any of [Xtreme's] employees . . . [Encana] may immediately terminate this Contract with cause and pay [Xtreme] only any amounts currently due."
>
> • Xtreme warrants that "all work and services . . . shall be done with due diligence, in a good and workmanlike manner . . . in accordance with good drilling operation practices."

Although the Court has extensively reviewed both parties' thorough evidentiary submissions with regard to this issue, it will not attempt to summarize them here. It is sufficient to note that there is a genuine dispute of fact between the parties as to, among other things, whether Xtreme's performance substantially complied with the contract's language. Encana has come forward with correspondence in March 2008 that advised Xtreme that "Rig 6 [the rig where the accident later occurred] has failed to meet the standard of performance" of due diligence and workmanlike services in the contract, as it has had "excessive downtime incidents and equipment failures" among other things. Xtreme responded that, although the rig admittedly had "certain performance issues," it believed that it had provided its services consistent with the

18

contract's requirements.  Encana wrote to Xtreme again in June 2008, after the rig accident, and again stated that "Rig 6 has continued to fail to meet the standard of performance set forth" in the contract.  At the end of the letter, Encana advised that "this letter is a continuation of the 30-day notice delivered in March 2008 . . . Encana is not satisfied with performance."  This correspondence, among other evidence supplied by the parties, sufficiently demonstrates a genuine dispute as to whether Xtreme's performance satisfied the contract's requirements, thus preventing summary judgment in Xtreme's favor.

Similarly, there is a genuine dispute of fact as to whether Encana complied with its obligations under the contract.  Xtreme points out that the contract required Encana to object to invoices tendered by Xtreme within 15 days of receipt.  Xtreme has come forward with evidence that it tendered several invoices to Encana, and that Encana did not timely object to the contents of those invoices.  This evidence prevents the Court from granting summary judgment to Encana.

Accordingly, both Encana and Xtreme's motions for summary judgment are denied.

## **CONCLUSION**

For the foregoing reasons, Alberta's Motion for Summary Judgment **(# 101)** is **GRANTED**, and Alberta is entitled to judgment on Xtreme's claims against it for negligence and products liability.[7]  Pacific's Motion for Summary Judgment **(# 104)** is **GRANTED**, and Pacific is entitled to judgment on Xtreme's claims against it for negligence and products

---

[7]The Court will not enter immediate judgment in favor of Alberta or Pacific pursuant to Fed. R. Civ. P. 54(b).  Both defendants have counterclaims extant against Xtreme which have yet to be adjudicated.

19

liability. Pacific's Motion for Attorney's Fees **(# 117)** is **DENIED**. Encana's Motion for Summary Judgment **(# 120)** and Xtreme's Motion for Summary Judgment **(# 121)** are **DENIED**.

Dated this 19th day of September, 2010

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge